**Robert J. WASYLK, Claimant-Appellant,**

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, Chairman, David L. Adams, Member, Paul M. Hutson, Member, and Sears, Roebuck & Company, Respondent-Appellees.**

No. 2–483A120PS.

Court of Appeals of Indiana, First District.

Oct. 18, 1983.

---

Robert J. Wasylk, pro se.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Robert J. Wasylk appeals a determination of the Review Board of the Indiana Employment Security Division that he voluntarily left work without good cause and denying his claim for unemployment compensation benefits. We affirm.

## FACTS

Wasylk was employed on a part-time basis as a cashier at Sears Roebuck's auto center in the Lafayette Square shopping center in Indianapolis. At the time of his employment he signed a document entitled "Statement for Part-time Work" which provided: "This statement is to acknowledge that it has been explained to me the work for which I am being considered is part-time work only. I understand that I am to be called as needed and have not been promised a certain number of hours per week." Record at 42.

Wasylk commenced work on January 27, 1982, and worked until October 25, 1982, on a schedule of 8:00 A.M. until 5:00 P.M. on Mondays and Fridays, and from 8:00 A.M. until 1:30 P.M. on Tuesdays, Wednesdays, and Thursdays. When his hours were changed to 8:00 A.M. until 1:00 P.M. Monday through Friday, Wasylk quit.[1]

Wasylk's application for unemployment benefits was denied on the ground he voluntarily left work without good cause.[2] The Review Board adopted the findings of the Referee which, *inter alia,* recited the previously quoted statement signed by Wasylk and found further:

"Under the express agreement there was no guarantee of a certain number of hours of work per week. The claimant's hours on Monday and Friday were cut by four hours per day. The claimant left work for this reason. Since under the express agreement between the claimant and the employer the claimant had no guarantee of hours per week, the employer's cut in his hours did not constitute a breach of employment agreement as would constitute good cause in connection with the work for leaving available employment. Under these circumstances and in light of the burden of proof in voluntary leaving cases, it is held that the

claimant left his employment voluntarily without good cause in connection with the work under Chapter 15–1 of the Act." Record at 54–55.

## ISSUE

The sole issue presented for our determination is whether Wasylk voluntarily left his employment without good cause.

## DISCUSSION AND DECISION

■ The purpose of the unemployment compensation act is to provide benefits to those who are involuntarily out of work, through no fault of their own, for reasons beyond their control. *Walter Bledsoe Coal Co. v. Review Board,* (1943) 221 Ind. 16, 46 N.E.2d 477; *Frank Foundries Corp. v. Review Board,* (1949) 119 Ind.App. 693, 88 N.E.2d 160, *trans. denied·* (1950); *Muncie Foundry Division v. Review Board,* (1943) 114 Ind.App. 475, 51 N.E.2d 891, *trans. ·denied* (1944). Indeed, "the purpose of unemployment compensation legislation is to enable unfortunate employees who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." 76 Am.Jur.2d *Unemployment Compensation* § 5, at 879 (1975). For reasons hereinafter stated, we are of the opinion that Wasylk's claim is not within those class of cases which meet the purpose of the act.

■ While one who voluntarily leaves his work without good cause is subject to disqualification under the act, Indiana Code section 22–4–15–1, there are circumstances under which the employee's voluntary leaving his employment is justified, and no disqualification results. In such cases, the claimant bears the burden of proving that he left his employment voluntarily *with* good cause, *Berzins v. Review Board of*

---

1. Wasylk was not terminated until November 22nd. Supposedly, he was off work as a result of illness although he refused to furnish medical documentation. He was carried on the employment rolls until November 22, 1982, when he submitted his resignation. His resignation

was not for medical reasons but was prompted by the reduction of his hours of work. Record at 22.

2. A disqualification for benefits under Indiana Code section 22–4–15–1.

*Indiana Employment Security Division,* (1982) Ind.App., 427 N.E.2d 1121, and "must establish: (a) that his reasons for abandoning his employment would impel a reasonably prudent man to terminate under the same or similar circumstances; and (b) that these reasons or causes are objectively related to the employment. [Citation omitted]." *York v. Review Board of Indiana Employment Security Division,* (1981) Ind. App., 425 N.E.2d 707, 710. Consistent with the purpose of unemployment compensation laws, a stricter standard is imposed on those who voluntarily quit working. *York.* Whether good cause for voluntarily leaving one's employment has been established is a factual determination for the Review Board. *Berzins.* Further, as a court of appellate review, we are bound by the Board's negative decision unless the evidence would compel reasonable persons to reach a contrary result. *Berzins; York.* The Board's findings of fact ordinarily are binding upon us, and we cannot weigh the evidence and may consider only that evidence favorable to the Board's determination. *Id.*

Wasylk appears to argue that the reduction in his hours of work amounted to a unilateral change of agreed working conditions by Sears which gave him good cause to leave his employment. He contends the fact of his working regularly from 8:00 to 5:00 on Mondays and Fridays and from 8:00 to 1:30 on the other three work days for the period of January to October created an agreement between him and his employer for that specific work week. Thus, he argues, when Sears unilaterally reduced his hours it breached that agreement thereby providing justification for his abandonment of employment. We do not agree.

In the absence of a specific agreement otherwise, it is the employer's prerogative to set business hours, working schedules, and working conditions. An employee, however, has a right to place conditions or limitations upon his employment which, if made known to and accepted by the employer, become contractual working conditions. If the working conditions thus agreed upon are unilaterally changed by the employer and the employee chooses not to accept the change, the employee will have just cause for termination of employment and will not be disqualified from receiving unemployment compensation benefits. *Poort v. Review Board of Indiana Employment Security Division,* (1981) Ind.App., 418 N.E.2d 1193; *Moore v. Review Board of Indiana Employment Security Division,* (1980) Ind.App., 406 N.E.2d 325; *Jones v. Review Board of Indiana Employment Security Division,* (1980) Ind.App., 399 N.E.2d 844, *trans. denied.* Here, despite Wasylk's contention to the contrary, there was no unilateral change of *agreed* working conditions.

Wasylk attempts to find an implied agreement for a certain number of working hours in the fact that he worked those hours for several months. He relies on *Ocean Accident & Guarantee Corporation v. Carter,* (1940) 62 Ga.App. 188, 8 S.E.2d 538, but his reliance is misplaced. *Carter* is a workmen's compensation case dealing with the determination of what constitutes a "regular work week" and "regular wages" under the then existing Georgia worker's compensation act. The case does not hold that the practice observed constitutes a contract to continue that practice as Wasylk would have us believe. If *Carter* did hold as Wasylk contends, that case is not determinative of Indiana law. Furthermore, *Carter* was overruled by the Georgia Supreme Court. *Carter v. Ocean Accident & Guarantee Corporation,* (1940) 190 Ga. 857, 11 S.E.2d 16.[3]

The question of whether a reduction in the hours of employment constitutes good

---

**3.** In *Carter,* the employee worked three days per week at $5.00 per day. The Georgia Court of Appeals held his regular weekly wage should be computed at $15.00 per week—$5.00 per day for the three days actually worked. The Georgia Supreme Court reversed holding the $5.00 daily rate should be multiplied by six, the number of days in an ordinary work week, to determine the regular weekly wage. Obviously neither opinion in *Carter* is relevant in this case.

cause for quitting work has been dealt with by courts in other jurisdictions. It has been held that a drastic reduction in the hours of work constituted good cause. *Knapp v. National Convenience Store,* (1981) Fla.App., 404 So.2d 380 (claimant who had worked 56 hours per week for 3½ months was reduced to 16 hours per week); *Luoma v. Employment Division,* (1976) 27 Or.App. 913, 558 P.2d 366 (long-time full time employee had weekly hours reduced from 40 to 20 and then to 12); *Unemployment Compensation Board of Review v. Handy Markets, Inc.,* (1976) 25 Pa.Commw. 535, 360 A.2d 268 (refusal to accept reassignment from full-time to part-time at reduced pay.) On the other hand it has been held that although a substantial reduction in working hours, under some circumstances, may provide good cause for termination of one's employment, a part-time worker who had previously refused full-time work, does not have good cause to quit simply because her hours were somewhat reduced. *Stone v. South Hill Chevron,* (1978) 99 Idaho 162, 578 P.2d 1093. In *Clark v. Bogus Basin Recreational Association,* (1967) 91 Idaho 916, 435 P.2d 256, the claimant had been employed as a ski lift operator at a ski resort. The previous two seasons he had worked a double shift. He was reduced to a single shift and quit. Although he testified he had discussed working a double shift and expected it, the court held he quit voluntarily without good cause. The court observed there was no allegation he was offered a double shift as part of his contract of employment.

In *White v. Levine,* (1976) 52 A.D.2d 1003, 383 N.Y.S.2d 438, a college student was employed by New York City under college aid program which limited him to 20 hours per week. Later, he was promoted to supervisor and allowed to work 35 hours at the same pay. Ten months later, because of the city's financial woes, he was reduced to the original 20 hours per week. The court held the claimant left voluntarily without good cause.

Where the claimant's hours were reduced to 16 hours per week because of a seasonal reduction in business resulting in a general reduction of hours for all employees, the claimant was denied benefits on the ground of voluntarily leaving work without good cause. *Hedrick v. Employment Division,* (1976) 25 Or.App. 93, 548 P.2d 526.

■ Here, Wasylk, by his own written and signed acknowledgment, was a part-time employee subject to call when needed with no guarantee of any number of hours of work. He had no contract of employment for any specific hours. He was not a full-time employee whose hours were reduced in proportion to the reduction in *Knapp* and *Luoma.* Neither is he within those classes of persons whom it is the purpose of the act to protect. He was not involuntarily unemployed through no fault of his own as a result of conditions over which he had no control. Rather, he is more like the claimants in *Clark* and *White.* His unemployment resulted from conditions completely within his control—he quit—and his leaving his employment was voluntary and without good cause within the statutory disqualification.

Judgment affirmed.

ROBERTSON, P.J., and NEAL, J., concur.